Ms. Field? Yes. You may begin. May it please the court, my name is Catherine Field and I represent Denver on the appeal 21-1401 and Lieutenant John McDonald on the cross appeal 21-1415. As the Supreme Court has repeatedly recognized, a municipality's culpability for deprivation of rights is at its most tenuous where a claim turns on a failure to train. Here the municipal claim that the district court allowed to survive summary judgment sought to hold Denver liable for failing to train its police officers not to shoot out of anger or in retaliation. This claim was not based on the ordinarily necessary pattern of constitutional violations but rather sought to hold Denver liable on the basis of a single incident. Accordingly, Mr. Valdez was seeking to hold Denver liable in the most rare and narrow category within the limited circumstances the Supreme Court has recognized for failure to train. As a matter of law, Mr. Valdez's theory meets none of the Supreme Court's stringent standards for establishing single incident municipal liability and for that reason the district court erred in denying Denver summary judgment. Explain why that's an issue of law. I think you agree if it's not an issue of law you're out of court on this because you didn't appeal the denial of a rule 50b motion. Am I correct about that? So am I correct that your success depends on convincing us that this was a wholly matter of law? Is that correct? Correct, your honor. And in this court's precedent of Haberman, if the material questions of fact are not in dispute and the denial of summary judgment is based on the interpretation of a purely legal question, such a decision is appealable after a final judgment. And this is what we have here. By the way counsel, we have this rule 28j that had come in about the Supreme Court's case on Dupree. Would the court's potential disposition of that case have an impact on this case? I think it's premature to say that the issuance of that cert petition changes this premature. But if they decided a certain way, it could affect this circuit's law on whether we can even reach the arguments that you're making. So again, I'm asking you, should that be relevant whether we even proceed to address this at this point? I think this court should follow its own or will it go away? Could it go away? I think it certainly could go away. In Dupree, they did issue cert on kind of this question of whether a purely legal question is appealable after final judgment. This 10th Circuit's precedent in Haberman, it follows the majority of the circuit, so there's certainly a chance that Haberman does not get overturned. Even if the Supreme Court in Dupree finds that an issue on summary judgment on a purely legal question is no longer appealable after final judgment, there still is reason to overturn the verdict against Denver in this case, particularly because of a couple of errors by the district court. Okay, I don't want to get, we probably ought to get back to the charts this question. Well, it seems to me that the Supreme Court can hurt you, it can't help you. In other words, if we find that, if we determine that your issue is not a purely legal issue, then you're out, regardless of what the Supreme Court holds. What could happen, though, is we could agree with you that your issue on summary judgment is a purely legal issue, and the Supreme Court says, even then, you have to raise it again in a 50-B motion, which you did, but you didn't appeal the denial. So it seems to me that the Supreme Court decision can't help you. So it's granted on a factual determination of sufficiency of facts, or on a purely legal issue. Because if you don't convince us of that, the Supreme Court can't help you. Is that correct? Correct, correct. And I do think it's a purely legal issue. What we have here is, we're looking at single incident municipal liability. And you can make it a single issue, like by saying that if there is a dispute of fact, you're going to assume facts contrary to your view. I mean, that means the facts are no longer a concern, and you've got just a symbol, the single issue you just articulated, legal issue. Correct. And if we want to look at the undisputed facts in this case, and why I think it's dispositive that it's a legal issue, given those undisputed facts. Well, counsel, my understanding though, is if the case has gone to trial, then if you're going to challenge the summary judgment ruling, don't you have to rely on the trial record? If we were challenging the sufficiency of the evidence at trial, yes. But if it's a purely legal question, this court can reach it. And this is a purely legal question, because we're talking about single incident municipal liability, where the Supreme Court has established legal guardrails to ensure that that liability does not trend into the the Supreme Court has established these guardrails. Well, counsel, you've made multiple arguments about why summary judgment shouldn't have been granted. And I take it that you think that all of them raise purely legal issues. But could you pick one or two that you think really are your strongest ones to stand as purely legal issues and explain why? So I will focus on two different things. First of all, it's undisputed that Denver trains on the constitutional limits of the use of lethal force. And that alone should foreclose any single incident municipal liability claim in this case. Because what you need to have in order to have a failure to train claim is an utter lack of an ability to cope with the situation. If we provide an officer the legal confines in which they can use lethal force, when a plaintiff comes up and says, well, they should have picked, they should have done a little bit different here, a little bit different here, that goes into the realm of, well, could we have offered better or different training? Maybe. But that's not sufficient to support municipal liability. Well, as I understood the district court, it was saying the jury can use its common sense to infer that it would be obvious to the people in charge of the police department that officers are going to be tempted to use lethal force when they get really angry or things like this. And you argue, but that hasn't happened. They haven't shown it's happened in the past, which is a good argument. But the judge said there's enough evidence for a jury to find that this was obvious to the department and they should have trained specifically on this point. That sounds like a factual issue. Is that factual argument barred by some legal doctrine that you to what this court has previously articulated in other cases, that an obvious law violation cannot be the grounds for finding deliberate indifference against the city? And let me rephrase that a little bit. So where the court found that it was common sense that a jury could find that it was obvious that an officer might encounter this kind of situation. What we have to really look at is whether the deliberate indifference standard, which is a stringent standard, is met. And that standard doesn't ask whether it would be common sense to a jury that this thing could happen, but rather whether it would be patently obvious to Denver that it would need to train officers not to shoot out of anger at a suspect who poses no threat. And it's not patently obvious to Denver that it needs to provide that training where it should be obvious to anyone that that wouldn't be allowed. Well, why isn't that a fact question? The obviousness question. In other words, I mean, here we have the officers been shot, right? I mean, chasing the truck, getting shot, not just being angry, but being shot. And officers get involved in chasing, fleeing felons, at least maybe not every day, but it's not an unusual circumstance. So why wouldn't it be obvious that if you have an officer who's involved in the chase and he gets shot, needs some guidance on what to do next? Well, I would say that under the undisputed facts that the officer has that guidance because we do train on the constitutional limits. Well, there was no guidance on what to do if you've been shot. But I think the deliberate indifference standard asks whether it's patently obvious that Denver is required to train on that area. Right, and isn't whether it's patently obvious a factual determination? I mean, wouldn't that be something that you'd say to the jury? Would it be patently obvious to the Denver Police Department that this needs to be addressed? Let me build on that. Is there any Supreme Court decision saying that a jury can't do that without evidence that has happened before? Go ahead, answer his question, but be thinking of mine to save time. Sure. I think the Supreme Court has never approved a single incident municipal liability claim. It is the most rare and narrow category of claims. And so I think that that's where we're at with these being legal questions because we have these guardrails from the Supreme Court. And perhaps if we get closer, you know, if you get closer to questions of fact, it's sufficient. But I think in this case, it's clear that those guardrails must be followed as legal principles. And I'm going to, if the court doesn't have any more questions, I'll reserve the remainder of my time. Thank you. You're not going to be able to argue any other issues on rebuttal that you just reserved now. That's not a proper use of rebuttal. You realize that. Can I address them? Yeah, why don't you? I think that was a misconceived decision. I do also just want to say, even if the court doesn't specifically, if the court finds that it doesn't have jurisdiction on the summary judgment issue, there are errors by the district court that require reversal of the verdict against Denver. And specifically, that the district court erred, it abused its discretion in allowing municipal liability to remain a moving target throughout trial, including by creating at mid trial through the jury, the revised jury instructions, a municipal liability theory that had been presented before. And furthermore, by erring in the jury instructions when it didn't offer, again, these very specific guardrails that the Supreme Court has established with respect to the jury misunderstood the legal principles for a single incident municipal liability and may have imposed liability on the grounds of responding to superior liability. And I'll reserve the remainder. Thank you. Good morning and may it please the court. My name is Adam Mueller and I represent Michael Valdez. Denver argues that Mr. Valdez never should have received a jury trial because his evidence was insufficient to survive summary judgment. The problem for Denver is that the jury concluded the evidence was sufficient. The district court denied the city's Rule 50 motion for judgment as a matter of law and the city has not appealed that decision. So as it stands today in this court, there is no dispute that Mr. Valdez's trial evidence was more than sufficient to hold the city liable. Well, let me challenge that. Okay. I think the gist of what the city has said, and I think there's a lot of case support for this, is you can't show deliberate indifference by not training unless you have experience showing that the training was necessary, that this specific training. Here they had, maybe it's obvious to the jury that officers are going to get mad and da da da and do things contrary to what they're trained to do. But the plaintiffs didn't put on any evidence of prior experience in that regard. And that comes up so often in prison cases where there might be a suicide and we affirm summary judgment for the jail or the prison because they haven't heard any suicides. In retrospect, it's pretty obvious you don't leave a rope in the cell or whatever, a sheep in a chair. But we have so many cases where summary judgment for a defendant, law enforcement agency, is granted because there's no evidence that they had experienced this before. Why is that not enough to say that the verdict here can't stand? Two points, a procedural point and a substantive point, if I could. The procedural point first, which is, as your Honor pointed out, there are a number of cases where summary judgment is granted in favor of a municipality or whoever, and then there's an appeal from that because the grant of summary judgment is a final appealable judgment. This case is different because it was the denial of the motion for summary judgment. Now I went through, this is continuing my procedural point, I went through the government or the city's reply brief for all the cases they cited in support of their assertion that a purely legal issue was at stake in the district court's denial of summary judgment such that they can appeal now after a full trial on the merits without any reference to the trial record. None of them are like this where a summary judgment motion was denied and then the court on a 1983 claim takes up the denial of the summary judgment motion after a full trial. We have tons of cases, as you said, where summary judgment is granted to the municipality. That's a final judgment. You can appeal it. The only record you have is the summary judgment record. We also have cases where judgment was entered following a jury trial. Every single Supreme Court case the government cites, the city cites, where they say, the Supreme Court has never recognized a single incident municipal liability claim. Every single one is a jury verdict and the Supreme Court is dealing with a trial record. That's City of Canton, Connick County or Bryan County versus Brown and City of Oklahoma. So the procedural point is, I don't, you know, to reiterate, I don't think this is before or probably before the court. The substantive point is that Canton itself recognizes that even without prior experience or prior practice or a pattern, whatever word you want to use, there is a category of cases where the need for training is so obvious that the failure to give that training is substantially certain to lead to a deprivation of constitutional rights. That was the theory here. The jury was instructed on that theory and it is, as a lot of the questions suggested, a question of fact whether something is so obvious that the city should have known. So I don't think the failure, if we're going to assume there was a failure, to point to prior acts like this one means necessarily that the claim can't succeed. And I point this court in particular to its 1993 decision in Zuckel versus City and County of Denver, which was also a single incident quote-unquote single incident claim, where this court, after a jury trial, affirmed the judgment in favor of the plaintiff. So if I need to show some type of notice, which I don't think I do, or excuse me, if I need to show some type of pattern, which I don't think I do, Zuckel helps me establish that. So I guess it's really three points. Procedural point and two substantive points. You can have a single incident theory. It's a jury question whether it's obvious. And we know it's a jury question because the jury was instructed on it. In Zuckel, was it argued on appeal? Yes. I'm sorry. Whether the jury verdict could be sustained despite any evidence of a prior similar incident? I believe so, Your Honor. I mean, I know they had, the context of that case was there had been a number of shootings within a short period of time. But I don't know that they were all the basis of the claim. I think the claim was that Denver, in that case, gave no training, basically, on shoot, don't shoot, what the constitutional limits of shooting or the use of lethal force were. And key to that as well, as the court puts in its appendix, is this letter from the district attorney, Norm Early at the time, to the city of Denver nearly 30 years ago now, putting Denver on notice of these things it should have done and should do in the future, basically none of which Denver has done in the last 30 years. But if the obviousness of this is always a jury question, how does the court, the appellate court, prevent this from as... Expanding. Yes, as respondeat superior. There have to be some limits on when the jury is allowed to determine that this is obvious, even though it hadn't happened before. Because the human nature is, once it's happened, it's obvious, yes. If it happens, it can happen. It's possible. So what's left for the appellate courts? Do we always let this go to the jury on the ground that it was obvious that they should have done this? Is that where we are now? Is that what we'd be saying by affirming here? No, Your Honor, you wouldn't be saying that. So what limitations are there to this proposition that it's up to the jury to determine whether it was obvious? So a couple of points. The first is the court wouldn't be saying that because I think the issue isn't actually properly before this court. But if there are some limits that courts have to place on it, regardless of the evidence, then that's a legal issue. And so if you're going to tell me that there's some limits, then that's a legal issue. Maybe that wasn't raised properly. There are lots of things. The Supreme Court could say, too bad. Even if it was a purely legal issue, you need to pursue it at trial. But I won't give that caveat to witnesses. Well, I totally understand what you're saying. Let me flip my order of analysis. I'll do substance, then procedure. Substance, there are limits. And the court gave those limits accurately in the jury instructions. The deliberate indifference instruction, which is on page 7062 of the Joint Appendix, lays out those limits. And it says things such as, this is the first element, that Denver's policymakers know to a moral certainty that police officers will confront a situation like the incident in this one. Second, the situation presents Denver police officers with a difficult choice, the sort of which training and different supervision would make less difficult. And third, the wrong choice will frequently cause the deprivation of a citizen's constitutional rights. So substantively, that's the deliberate indifference instruction. We have a causation instruction. So at the summary judgment stage, the judge had to determine that they could, by their common sense, know that the leaders in the department had a moral certainty that this evidence that the police officials in Denver knew to a moral certainty. Well, I would dispute that there was no evidence on that point. In the summary judgment record, not in the trial record, or excuse me, not in the record before this court, because we don't have the trial record. We don't have the exhibits. But in the summary judgment record, we have, for example, the deposition testimony of Brad McKiernan, who was the city of Denver's 30B6 opponent, which Denver strenuously fought a 30B6 deposition. When that happened, Mr. McKiernan went through the type of training that was available, talked about why we chose, why the city of Denver chose to offer some training, not others, why training was voluntary, why training wasn't required. There was evidence on this, Your Honor. And it talked about— And that supported the proposition that they had a moral certainty that this training they didn't give was necessary? I think so, Your Honor. You also have the testimony from our expert, Chief Montgomery, who testified to this. I mean, I don't think—there was no expert who, you know, I'm not sure it's properly subject of expert testimony to talk about moral certainties. I imagine that's a jury call. But they certainly—city of Denver doesn't dispute that that language in the jury instruction is correct or incorrect. So as it stands now, I think that's a correct instruction. So substantively, I do think there was this evidence. Procedurally, again, and this is what this court said in Whelan, which I cited in the briefs, you know, I do not think Judge Martinez was wrong to deny summary judgment. But let me assume for one second that he was. Whelan says the proper remedy is not to appeal that denial because that's not a final appealable judgment. The proper remedy is to reassert those arguments in a Rule 50B motion and then appeal the denial of that. Mistakes get made. I don't think one was made here, but— Well, but, counsel, then we have Haberman, right? Correct. So if we have a pure issue of law, we're back to summary judgment? Yeah. So let me talk about Haberman. I don't mean to cut you off. I'm sorry. Well, let me throw in one other question and maybe we can take care of them at the same time. You were talking about the trial evidence. Under the Supreme Court's decision in Ortiz v. Jordan, does the trial evidence record developed here supersede whatever the record was at summary judgment? Yes. And because the City is not challenging the trial evidence or its insufficiency or provided— But then we come back to Haberman. I assume that the response to that would be, well, that's fine, but it's a pure question of law. I would say it's not a pure question of law at best. It's an application of law to facts. Well, isn't one of the guardrails the argument that the City's making, which is that— well, correct me if I'm wrong, but was there any dispute that the officers received deadly force training under the constitutional standard? Yes, there was, Your Honor. We didn't even have evidence, for example. And isn't that the guardrail? I mean, once they get deadly force training under the constitutional standard, how can you show deficient training? Okay. Two points. One, I think there was a dispute about that. Denver did not permit any discovery on any of the training Mr. Motika received before 2008, essentially. Certainly not any he had at his academy in 1997. He's been an officer for many years. I think there absolutely was a dispute. But second, Canton bakes into its analysis the fact that there can be some level of training provided, but it can be deliberately indifferent not to provide more. That's the framing of Canton. Canton says it can be so obvious such that the need to provide more or different training is obvious enough that the failure to do so will lead to the violation of constitutional rights. More or different bakes into the analysis the proposition that there is some training given. There is no case I'm aware of that, certainly not from this circuit, not from the U.S. Supreme Court, that says once you've provided some training, hello officer, this is your gun, you can only shoot when you're being threatened. That's all they tell you. That's it. The city's off the hook for failure of training. That's not the law. Related question, but it jumps to the jury instructions. And that is the jury instruction that the city proposed that just because training could have been better or different doesn't make it deficient. Why wasn't it error for the court to refuse to give that? Because the jury instructions already account for that, Your Honor. And I would point you in particular to the deliberate indifference instruction again, which is on the page of the Joint Appendix 7062. It's not enough that any, you can't just win on a claim by saying here's some training. That instruction tells the jury that the city must have constructive or actual notice that its failure to train is substantially certain to result in a constitutional violation and that it consciously or deliberately chose to disregard that risk of harm. That deliberate indifference occurs when a municipality fails to train its employees to handle recurring situations presenting an obvious potential for such a violation. That's this deficient training standard. I mean, I can point to lots of things that are deficient but aren't deliberately indifferent under the municipal liability standard. The standard is higher than that. I agree. And the deliberate indifference instruction already encompassed what the city was asking for in its instruction. And the district court certainly didn't abuse its discretion in denying to give that instruction. I see that I'm out of time. And if the court has other questions, I was going to address a little bit of our cross field. But we're out of time. Thank you, counsel. Thank you. I wish we could give two hours. You wouldn't get an opinion for three years either because we'd be spending all our time in the courtroom. Thank you, your honor. I just wanted to address first the Canton hypothetical. In the Canton hypothetical, which recognizes that single incident municipal liability can occur, there was no, absolutely no training on lethal force. Here, there's undisputed that we trained on the constitutional limits of use of lethal force. The district court found as much. And also, I believe in responding to our motion to summary judgment, Mr. Valdez essentially conceded as much that we trained on the constitutional limits of the use of force. And that's a legal question. If there is training, if we provide them with the ability to cope in these situations, then that should foreclose as a matter of law, single incident municipal liability. In addressing the- I was saying if there's any really, any substantive bona fide training, it shows they weren't deliberately indifferent. Maybe they were careless. Maybe they were Correct. And when we impose municipal liability in that situation where they're merely negligent, where they should have done more, they should have done better, that's where we cross the line to getting into respondent superior liability. And I say I'm out of time. Thank you, your honors. Thank you. Another interesting case. Thank you, counsel. Case submitted and you're excused to the extent you're not on the next case.